UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIE GROSS-LEE, on behalf of her minor child DA-G, <br><br> PLAINTIFF, <br><br> v. <br><br> WASHINGTON LEADERSHIP ACADEMY, <br><br> AND <br><br> DISTRICT OF COLUMBIA, <br><br> DEFENDANTS. | Civ. A. No. 1:22-cv-01695-CRC-GMH |

**REPLY TO WLA'S OPPOSITION TO
PETITIONER'S MOTION FOR STAY-PUT
– PRELIMINARY INJUNCTION AND
TEMPORARY RESTRAINING ORDER**

COMES NOW Ms. Jamie Gross-Lee ("Ms. Gross-Lee") on behalf of her daughter DA-G by and through undersigned counsel, to reply to Washington Leadership Academy's ("WLA") opposition to her motion for stay-put injunctions under the Individuals with Disabilities Education Act ("IDEA"). The two elements for a stay-put injunction are (1) whether litigation is pending and (2) whether WLA and/or ("the District") have proposed or effected a change in placement. 20 U.S.C. § 1415(j); *Eley v. District of Columbia,* 47 F. Supp. 3d 1 (D.D.C. 2014). WLA's main argument was to shift all blame and liability to the District. WLA also asserted that it has not changed DA-G's placement, while in the same breath admitted that it failed to provide DA-G with the fundamental residential components of her IEP. In its opposition, WLA does not dispute that litigation is pending. In addition, WLA does

1

not dispute that due to delays in placing DA-G in a residential setting, DA-G has not been receiving the fundamental residential elements of her residential IEP. Throughout its entire opposition, WLA explains that DA-G requires a residential setting, admits that DA-G's removal to a lesser restrictive environment is inappropriate for her, and describes the harms of the fundamental change in placement DA-G is still experiencing.

Accordingly, DA-G is entitled to stay-put in her then-current educational placement from her March 2022 IEP, which is a residential setting. Ms. Gross-Lee's stay put motions require prompt attention because DA-G went into a state of crisis again the evening of July 6, 2022. The evening of July 6, 2022, DA-G went into the tub with her clothes on and cut her wrist. Ms. Gross-Lee's husband called 911. Ms. Gross-Lee respectfully asks this court to grant her motions for stay-put and issue a preliminary injunction and temporary restraining order requiring WLA and the District to maintain DA-G's residential educational placement by funding and placing DA-G at Clearview Academy.

**I.    WLA concedes litigation is pending and that DA-G has not received her education in a residential setting since the IEP Team unanimously decided that DA-G requires a residential placement, which together satisfy the requirements for an automatic stay-put injunction.**

"Where a party fails to respond to arguments in opposition papers, the court may treat those specific arguments as conceded." *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 58 (D.D.C. 2012) (citing *Lewis v. District of Columbia*, 2011 WL 321711 at *1 (D.C. Cir. Feb. 2, 2011). "A litigant has the obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *Id*. (citing *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005). Indeed, "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." *Art & Drama Therapy Inst. Inc. v. District of Columbia*, 110 F. Supp. 3d 162, 169 (D.D.C. 2015).

The issue in this case is whether DG is entitled to an automatic stay-put injunctions. The two elements for a stay-put injunction are (1) whether litigation is pending and (2) whether WLA and/or the District have proposed or effected a change in placement. 20 U.S.C. § 1415(j); *G.B. v. District of Columbia*, 78 F. Supp. 3d 109, 114 (D.D.C. 2015) (citing *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984)); *Douglas v. District of Columbia*, 4 F. Supp. 3d 1, 4 (D.D.C. 2013). A fundamental change in placement occurs when there is an elimination of a basic element in the education program. *Eley,* 47 F. Supp. 3d at 15 (citing *Lunceford*, 745 F.2d 1577 (in footnote 11). More specifically, the District Court determined that a school system's failure to provide a child with her then-current non-public educational placement satisfies the stay put's second requirement – whether the school and/or the District have proposed or effected a change in placement under 20 U.S.C. § 1415(j). *Laster v. District of Columbia*, 394 F. Supp. 2d 60 (D.D.C. 2005).

WLA concedes that (1) IDEA litigation is pending and (2) DA-G has not been receiving her special education and related services in a residential placement pursuant to her IEP. WLA Opp. at 1-2 (". . . the student has not transitioned to a residential setting.") WLA did not contest either of these arguments—at all—in its six-page opposition. The delay in placing DA-G in a residential setting is a change in her educational placement. Given the delay in placing DA-G in a residential setting, WLA proffers that, ". . . OSSE[1] is responsible for that change [in placement] given its responsibility for the location assignment process." *Id*. at 5. For purposes of an automatic stay put injunction, determining which party changed the placement is immaterial. The party responsible for the change in placement is a separate inquiry than whether a change in placement occurred and considering when to grant automatic stay put

---

[1] The D.C. Office of the State Superintendent of Education ("OSSE").

3

injunction. The District and WLA, jointly or severally, changed DA-G's educational placement.

DA-G has been receiving educational services in a less restrictive placement, which is inappropriate for DA-G because it is less than what a residential placement can offer her. Without a doubt, WLA and the District have and continue to fail DA-G by preventing her from receiving education in an appropriate residential setting. This amounts to a change in placement. Accordingly, a stay-put injunction is required because (1) IDEA litigation is pending and (2) one or both defendants changed DA-G's placement.

## II. The delayed location assignment process eliminated the fundamental residential elements of DA-G's IEP, which amounted to a change in placement, thereby triggering an automatic stay-put injunction.

In the District, a child's educational placement is defined as ". . .'something more than the actual school attended by the child and something less than the child's ultimate educational goals' and can include both the physical location of educational services and the services required by the student's IEP." *Eley*, 47 F. Supp. 3d 1. In addition, the most recent agreement between the school and parent about the child's IEP or placement". . .functions as the current educational placement for purposes of the IDEA's stay-put provisions." *H.R. v. District of Columbia*, 2022 U.S. Dist. LEXIS 104466, *14 (D.D.C. 2022).

A fundamental change in placement occurs when there is an elimination of a basic element in the education program. *Eley,* 47 F. Supp. 3d at 15 (citing *Lunceford v. District of Columbia Bd. of Educ.*, 745 F.2d 1577 (D.C. Cir. 1984) in footnote 11); *H.R.*, 2022 U.S. Dist. LEXIS 104466 at *18.; *Laster*, 394 F. Supp. 2d at 64. The District Court held that moving a student from a private school to a public school effected a "massive" change in placement, which fulfils the second requirement for a stay-put injunction. *K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 44 (D.D.C. 2019). In DA-G's case, the reverse is also true – the failure to move

4

a child from a public general education school to a private residential school pursuant to the IEP is a massive and impactful change in placement. This massive change of placement satisfies the second stay-put injunction requirement for DA-G's case.

WLA does not contest that DA-G's educational placement is meant to be a residential setting. WLA Opp. at 1. WLA's arguments that it did not change DA-G's placement are devoid of any authority or explanation; instead, WLA is merely conclusory. *Id*. at 4-5. Based on the *Eley/Lunceford* standard, the delay in placing DA-G in a residential setting – which has eliminated the residential component from her IEP – is a change in placement. *Id*.; *Eley,* 47 F. Supp. 3d 1 at 15 (citing *Lunceford*, 745 F.2d 1577 (in footnote 11). WLA agreed that DA-G has not received the basic residential components of her IEP. WLA Opp. at 1-2. In fact, WLA's attempts to seek a residential setting from the District's Certificate of Approval ("COA") list shows that WLA recognizes the change in placement and the detrimental consequences resulting from that change. *Id*. at 3.; *see also* WLA Opp, Ex. 10 at 103-104 (detailing DA-G's continued pattern of going into crisis and attempted suicide). Unfortunately, DA-G began cutting herself again the evening of July 6, 2022. Since the delayed location assignment process eliminated basic elements in DA-G's education program, DA-G was and is experiencing a change in placement. Accordingly, Ms. Gross-Lee has met the change in placement requirement for an automatic stay put injunction.

### III. WLA and the District are jointly or severally liable to provide DA-G a FAPE in a residential placement.

Under the IDEA, any Local Education Agency ("LEA")[2], like WLA, and State Education Agency ("SEA"), like OSSE (*non suis juris* of the District), that receive federal funding are

---

[2] Letter to Lever, 211 IDELR 185  (OSEP 1979)(The LEA is ultimately responsible for providing children with disabilities with a residential placement at no cost where that placement is deemed educationally necessary.)

5

required to ensure a free appropriate public education ("FAPE") is available to all children with disabilities residing in the State/attending the LEA's school between the ages of 3 and 21. 20 U.S.C. §§ 1412, 1413, 1415(a); *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 137 S. Ct. 988, 991 (2017). D.C. law also established situations where the LEA, SEA, or both are required to provide children within the District with a FAPE. D.C. Code § 2907; 5E DCMR §§ 3019.8, 3019.9.[3] The only time an LEA is not fully responsible for providing FAPE is when the SEA usurps the direct provision of FAPE. *Ellenberg v. New Mexico Military Institute*, *supra*; *Gadsby v. Grasmick*, *supra*. In fact, *Ellenerg* cites §1413 of the IDEA, which requires an SEA to provide services directly to disabled children if the LEA proves incapable of providing FAPE. *Ellenberg* at 1269; *See also* D.C. Code §§ 2907, 38–2561.03(a); D.C. Code § 2907; 5E DCMR §§ 3019.8, 3019.9.

The IEP is at the core of a FAPE. *Olu-Cole v. E.L. Haynes Pub. Charter Sch.*, 930 F.3d 519 (D.C. Cir. 2019) (stating the "primary vehicle" for securing an appropriate public education is the child's IEP) (*citing Honig v. Doe*, 484 U.S. 305 (1988)). Both the LEA and SEA are responsible to ensure all students, like DA-G receive a FAPE pursuant to the child's IEP. 20 U.S.C. §§ 1412, 1413, 1415(a). One basic and essential component of the IEP is implementing the IEP in the least restrictive environment ("LRE"). 20 U.S.C. §1412(a)(5); 34 C.F.R. § 300.114. The LRE is also known as the educational placement of the child. *Id.*; Pl. Mot., Ex. 7 at 95, 96; Ex. 8 at 128-129.

An "educational placement," is something 'between the physical school attended by the child and the abstract goals of a child's IEP," with a focus on the fundamental elements of the programming. *Middleton v. Dist. of Columbia*, 312 F. Supp. 3d 113, 130 (D.D.C. 2018); *Eley,* 47 F. Supp. 3d 1 at 35. Throughout the school year, the LEA is responsible for implementing all components of the IEP, including the LRE. 20 U.S.C. §§ 1412, 1413, 1415(a); 34 C.F.R. §

---

[3] *See* WLA Opp at 4, fn 3.

300.323. When a student is in a residential setting, the LEA is required to implement a child's IEP by monitoring the student's progress, convening IEP meetings, and ensuring the residential school is complying with all components of the child's IEP. D.C. Code §§ 38–2561.03, 06; D.C. Mun. Regs. tit. 5-A § 3025.19-20 (2022).

The delay in identifying and funding a residential setting for a child, like DA-G, meant that her IEP was not implemented. *Eley* at 13-15. A failure to implement an IEP is a denial of FAPE. *Z.B. v. District of Columbia,* 888 F.3d 515 (D.C. Cir. 2018); *District of Columbia v. Masucci,* 13 F. Supp. 3d 33 (D.D.C. 2014) (explaining that timely IEP implementation is in public interest); *Laster,* 394 F. Supp. 2d 60 (holding that a school district must find an appropriate placement to implement IEP once it has been developed). In addition, LEAs and SEAs cannot use an "impossibility" defense to thwart a parent's claim of FAPE denial, even in situations where no private school will accept a child. *Schiff v. District of Columbia*, 2019 WL 5683903 (D.D.C. Nov. 1, 2019); *Brown v. District of Columbia*, 2019 WL 3423208 (D.D.C. July 8, 2019) (reasoning that the doctrine of impossibility cannot negate the obligation to provide children with a FAPE).

WLA makes the faulty argument that the LEA it is not solely or jointly responsible for the change in DA-G's educational placement and complying with stay-put. WLA Opp at 5. On the contrary, WLA conceded that DA-G is receiving her education in a lesser restrictive environment. *Id*. at 1-2. As DA-G's LEA, WLA is always responsible for providing DA-G with a FAPE, which includes providing DA-G with an education in her LRE – a residential setting. *Id*. The only time an LEA is not responsible for providing FAPE is when the SEA usurps the direct provision of FAPE. *Ellenberg v. New Mexico Military Institute*, *supra*; *Gadsby v. Grasmick*, *supra; See also* D.C. Code § 38–2561.03(a); D.C. Code § 2907; 5E DCMR §§ 3019.8, 3019.9. WLA tries to shift the burden of securing a residential placement and

complying with stay-put on the District's shoulders alone. WLA Opp. at 4-5. WLA cannot evade responsibility because impossibility is not a defense under the IDEA. Moreover, in this case, WLA and the District are both required to provide DA-G with a FAPE, including the implementation of her LRE – a residential placement.

Even if WLA is correct and the District has usurped the provision of FAPE through its location of assignment and funding processes, WLA is not freed from its obligation to provide DA-G with a FAPE, including her LRE – a residential setting. WLA Opp. at. 4 (citing D.C. Mun. Regs. tit. 5-E, §§ 3019.8 (b)(5)(3), (b)(7); D.C. Code §§ 38-2901, 2907, 38-2561.03). If this Court finds that District is not the party responsible for providing DA-G with a FAPE, then WLA must be responsible for providing DA-G with a FAPE and vice versa. DA-G cannot be left without any recourse due to WLA and the District's joint or several failures to provide DA-G with the fundamental residential component of her IEP. Accordingly, Ms. Gross-Lee requests that this Court order WLA, the District, or both to comply with stay-put by funding and placing DA-G at Clearview Academy – the only available residential placement with a bed able to implement her IEP.

**Conclusion**

WLA conceded that Ms. Gross-Lee is entitled to a stay-put injunction because (1) IDEA litigation is pending and (2) DA-G has not received any services in a residential placement, pursuant to her IEP. DA-G's case equates to a change in placement necessary for a stay put injunction.

WHEREFORE, Ms. Gross-Lee respectfully asks this court to grant her motion for stay-put and issue an injunction requiring WLA and the District to maintain DA-G's then-current educational placement in a residential school by funding and placing DA-G at Clearview Academy.

Respectfully Submitted,

*/s/ Dara Gold*
Dara Gold [1738242]
1100 H St NW, STE 260
Washington, D.C. 20005
(203) 541-0196
dara.gold1@camoranlaw.com

Attorney for Plaintiff

July 6, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 6 day of July 2022, I served the foregoing Reply via by filing it via the Court's electronic filing system, and that as a result of such filing, a notification and copy of such filing will be sent to counsel of record for the Defendants to:

Counsel for WLA
Lauren E. Baum
Law Office of Lauren E. Baum, PC
3573 Warder Street, NW, #2
Washington, DC 20010
202-450-1396
202-450-1397 (fax)

Counsel for the District
Tasha Hardy
Assistant Attorney General, Section II
Civil Litigation Division
Office of the Attorney General for the District of Columbia
400 6th Street NW
Washington, D.C. 20001
(202) 724-7794
(202) 741-8953 (fax)
tasha.hardy@dc.gov

Steven Rubenstein
Assistant Attorney General
Office of the Attorney General for the District of Columbia
Civil Litigation Division, Section Two
400 6th Street, NW
Washington, DC 20001
Work: 202-727-9624
Cellular: 202-701-5517
Fax: 202-741-0592
Steven.Rubenstein3@dc.gov

                                        */s/ Dara Gold*

                                        Dara Gold
                                        Moran & Associates